**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| GERALD PATRICK VANPATTEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Cause No. 1:11-cv-73-PPS |
| vs. | ) | |
| | ) | |
| ALLEN COUNTY JAIL, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Gerald Patrick VanPatten, a *pro se* prisoner, is proceeding on a claim that Lt. Sean

Oetinger[1] housed him under substandard conditions at the Allen County Jail and improperly

retaliated against him for complaining about those conditions. (DE 15.) Lt. Oetinger moves for

summary judgment in his favor. (DE 39.)

### Factual Background

Many of the important facts in this case are undisputed.[2] Van Patten was housed at the

jail from November 17, 2009, to March 11, 2011. (DE 39-1 at 2; DE 46-2 at 12-13.) When he

arrived at the jail, he was not suffering from any diseases or other medical problems. (DE 39-3 at

---

[1] In the complaint, Van Patten mistakenly spelled the defendant's last name as "Odinger." (*See* DE 1 at 2.)

[2] VanPatten asserts that the statements made in the two affidavits submitted by the defendants are "short of the truth," but his main complaint is that the individuals authoring the affidavits did not personally witness the events underlying this lawsuit. (DE 48 at 7.) However, the affiants do not purport to offer first-hand testimony about the underlying events, and instead their assertions pertain to routine matters such as the dates VanPatten was housed at the jail and the maintenance of records at the jail. (*See* DE 39-1; DE 39-3.) Van Patten has not submitted any contrary evidence to demonstrate that their statements are false, and indeed, he confirmed the accuracy of much of the information contained in the affidavits at his deposition. (*See* DE 46-1 at 3-49.)

1-2, 13-17; DE 46-1 at 9.)  He was housed in protective custody for his first 30 days at the jail, and thereafter was housed in cellblock C.  (DE 39-1 at 2, 51.)

Approximately a month after his arrival at the jail, VanPatten began to experience an "irritation" under his arms.  (DE 46-1 at 11.)  He put in a request for medical care, and was seen by a nurse on December 30, 2009.  (DE 39-3 at 10; DE 46-1 at 16-17.)  The nurse examined him and found what appeared to be boils under his arms.  (DE 39-3 at 10.)  She cleaned the area, applied antibiotic ointment, and scheduled him to see the doctor.  (*Id.*)  VanPatten was seen by a jail physician the following day and given an injection of Rocephin, an antibacterial drug, and a 10-day prescription for Doxyccline, an antibiotic drug.  (*Id.* at 8-9.)  The medications VanPatten received were effective in treating his irritation.  (DE 46-1 at 19.)  He had no recurrence of the problem during the rest of his time at the jail, although he has some scarring under his arms.[3] (*Id.*)  He suspects that the infection was Methicillin-resistant Staphylococcus Aureus ("MRSA"), although he acknowledges that no one has ever diagnosed him with that disease.  (*Id.* at 12.)

On October 24, 2010, VanPatten submitted an inmate request form complaining about the conditions of the showers, tables, and handrails in cell block C.  (DE 46-3 at 1.) Specifically, he complained that the tables were dirty, and that the showers and handrails had mold and mildew on them.  (*Id.*)  In accordance with jail policy, this form was forwarded to the B-shift commander at the jail, which at that time was Lt. Oetinger.  (DE 39-1 at 2.)  As a result of VanPatten's complaint, Lt. Oetinger came to speak with him sometime around the end of October.  (DE 46-1 at 32.)  The meeting was "pleasant," and VanPatten was able to convey his

---

[3]  At VanPatten's deposition, defense counsel described these scars  as "small circles, discoloration spots about the size of maybe my pinky nail on my hand."  (DE 46-1 at 20.)  VanPatten agreed with this characterization. (*Id.*)

concerns about cleanliness at the jail.  (*Id.* at 32-33.)  Lt. Oetinger shook his hand at the end of the meeting.  (*Id.* at 33.)  This was Van Patten's first and only encounter with Lt. Oetinger while he was housed at the jail.  (*Id.* at 20-21, 46.)

On November 5, 2010, Van Patten was informed by Corrections Officer Lemish (first name unknown) that Lt. Oetinger had assigned him to clean the showers in cellblock C.  (*Id.* at 33- 34.)  VanPatten responded that he did think it was fair he had to clean the showers, and was told by Officer Lemish that if he refused an order he would be taken to the "hole."  (*Id.*)  VanPatten then cleaned the two showers in the cellblock, which took approximately 20-25 minutes per shower to complete.  (*Id.* at 36.)  The showers at the jail were routinely cleaned by an inmate, who would scrub down the walls after a correctional officer sprayed them with disinfectant.  (*Id.* at 27-28, 35.)  Prior to the date VanPatten cleaned the showers, they were cleaned by other inmates on October 16, 2010, and October 29, 2010.  (DE 46-5 at 10-21.)  Records also show that maintenance was performed on the showers to unclog a drain on November 4, 2010.  (*Id.* at 16.)

Under jail policy, inmates were responsible for various tasks necessary to keep their living areas clean, including sweeping and wiping down tables.  (DE 46-1 at 27-28.)  VanPatten performed these tasks when it was his turn to do so.  (*Id.* at 29.)  The November 5, 2010, incident was the only time VanPatten cleaned the showers during the sixteen months that he spent at the jail.  (*Id.* at 43.)  Other than having to clean the shower against his wishes, he suffered no damages or other injury as a result of this incident.  (*Id.* at 44-45.)  The experience did not prevent him from complaining about other issues of concern to him.  (*Id.* at 47.)  Both before and after this incident, he submitted inmate request forms pertaining to various issues, including the

food at the jail, his commissary account, medical and dental concerns, and his personal property. (*Id.*; DE 46-3 at 1-15.)  On March 11, 2011, VanPatten was transferred to the custody of the Indiana Department of Correction ("IDOC") to begin serving his sentence. (DE 46-2 at 12-13.)

**Analysis**

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Not every dispute between the parties makes summary judgment inappropriate, however, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Id.*  To determine whether a genuine issue of material fact exists, I must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.  *See Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010).  A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in his or her own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case."  *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).  If the nonmoving party fails to establish the existence of an essential element on which he or she bears the burden of proof at trial, summary judgment is warranted.  *See Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006).

Van Patten's first claim is that he was housed under substandard conditions due to dirt, mold, and mildew in the showers and other common areas of the jail.  In evaluating a conditions

of confinement claim, courts conduct both an objective and a subjective inquiry.[4]  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  The objective prong asks whether the alleged deprivation or condition is "sufficiently serious" as to have resulted in "the denial of the minimal civilized measure of life's necessities."  *Id.*  Under this standard, inmates are entitled to be provided with adequate food, clothing, shelter, medical care, bedding, hygiene materials, and sanitation.  *See Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006).  However, the Constitution does not require that prisons be comfortable or pleasant, and prisoners cannot expect the "amenities, conveniences, and services of a good hotel."  *See Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988).  To satisfy the subjective prong, the prisoner must show that the defendant acted with deliberate indifference to his health or safety.  *See Farmer*, 511 U.S. at 834.  This is a high standard.  As the Seventh Circuit has explained:

> [C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, *i.e.*, the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so.

*Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (internal citations and quotation marks omitted); *see also McNeil v. Lane*, 16 F.3d 123, 125 (7th Cir. 1993) ("Obduracy and wantonness rather than inadvertence or mere negligence characterize conduct prohibited by the Eighth Amendment.").

Although VanPatten would have liked the jail to have been cleaned more often, the record shows that the showers and other common areas of the jail were functional and were

---

[4]  The record shows Van Patten was a pretrial detainee between November 2009 and January 2011 (*see* DE 39-1 at 12), during which time the Fourteenth Amendment applied to his conditions of confinement claim; once he was convicted the Eighth Amendment applied.  *See Lewis v. Downey*, 581 F.3d 467, 473-74 (7th Cir. 2009).  The governing standards are functionally equivalent, and "anything that would violate the Eighth Amendment would also violate the Fourteenth Amendment."  *Id.* at 475.

cleaned on a regular basis, including being sprayed with disinfectant. (DE 46-1 at 27-36; DE 46-5 at 10-21.) The mere presence of some dirt, mold, or mildew at the jail does not establish the type of severe deprivation needed to establish a constitutional violation. *See Carroll v. DeTella*, 255 F.3d 470, 473 (7th Cir. 2001) ("[F]ailing to provide a maximally safe environment, one completely free from pollution or safety hazards, is not [cruel and unusual punishment].");
*Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) (prison's practice of allowing standing water to accumulate in the shower, which inmate feared could cause spread of communicable diseases, did not constitute the denial of minimal civilized measure of life's necessities); *McNeil*, 16 F.3d at 125 (inmate's exposure to moderate levels of environmental contaminants did not violate the Eighth Amendment, because such exposure "is a common fact of contemporary life and cannot, under contemporary standards, be considered cruel and unusual").

Furthermore, although VanPatten did not care for these conditions, he has not established that he was injured as a result. *See* 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury."). He apparently believes the irritation under his arms was caused by the condition of the showers, but the record is devoid of any evidence to support this claim. Indeed, his symptoms went away when treated by a jail physician and did not return during the following year he was at the jail. Under these circumstances, VanPatten has not satisfied the first prong of the inquiry.

Nor has he established deliberate indifference by Lt. Oetinger. The record shows that VanPatten had no contact with Lt. Oetinger during the first 11 months he was at the jail, including during the time he developed the irritation under his arms. (DE 46-1 at 20-21, 46.) He

appears to be trying to hold Lt. Oetinger liable based on *respondeat superior* theory because he was a high-ranking officer responsible for overseeing operations at the jail. (DE 48 at 2-3.) However, the Seventh Circuit is clear that there is no *respondeat superior* liability under 42 U.S.C. § 1983, *see Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001), and Lt. Oetinger can be held liable only for his "own misdeeds... [and] not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). When Lt. Oetinger was made aware of VanPatten's complaint, he went to meet with him within a matter of days and listened to his concerns. After the meeting he took steps to improve the condition of the showers, as jail records reflect that the showers were cleaned by an inmate on October 29, 2010, and then by VanPatten on November 5, 2010, at Lt. Oetinger's direction. Although VanPatten would have preferred it was someone other than him that cleaned the showers, he has not established that Lt. Oetinger was deliberately indifferent to the conditions under which he was being housed. Based on the record, summary judgment for Lt. Oetinger is warranted on this claim.

VanPatten's remaining claim is that Lt. Oetinger improperly retaliated against him in violation of the First Amendment for complaining about the conditions at the jail. To establish a claim of retaliation, Van Patten must prove: (1) he engaged in activity protected by the First Amendment, (2) he suffered a deprivation that would likely deter First Amendment activity in the future, and (3) the defendant's action was motivated by the protected activity. *See Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012). VanPatten satisfies the first prong, because "[a] prisoner has a First Amendment right to make grievances about conditions of confinement." *Id.* (citation omitted). His claim fails on the second and third prongs, however.

VanPatten has not demonstrated that being assigned to clean the shower on one occasion would likely deter an inmate from engaging in First Amendment activity. Although cleaning the shower was probably not a pleasant task, the evidence shows that cleaning the common areas of the jail was a routine part of an inmate's activities. (DE 46-1 at 27-30; DE 46-5 at 10-21.) The showers had been cleaned by another inmate a week earlier, and it took VanPatten less than an hour to complete the job. (DE 46-1 at 36; DE 46-5 at 10-21.) Even though he did not think it was fair that he had to clean the shower, he acknowledged at his deposition that it did not deter him from complaining about other issues. (DE 46-1 at 47; *see also* DE 46-3 at 1-15.) Under these circumstances, he does not satisfy the second element. *See Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982) ("It would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise[.]"); *see also May v. Trancoso*, 412 Fed. App'x 899, 903-04 (7th Cir. Mar. 16, 2011) (concluding that inmate's First Amendment retaliation claim failed even though he was subjected to a strip search after complaining about an earlier search, because other inmates were subjected to the same type of strip searches).

VanPatten also has not demonstrated that Lt. Oetinger's decision to have him clean the showers was motivated by a desire to punish him for complaining. At most VanPatten has demonstrated a temporal link between his complaint and his being assigned to clean the shower, but this alone does not create a triable issue of fact. *See Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 851 (7th Cir. 2008) ("[M]ere temporal proximity is not enough to establish a genuine issue of material fact."); *see also Soto v. Bertrand*, 328 Fed. App'x 331, 333 (7th Cir.

May 6, 2009) (holding that suspicious timing alone did not warrant a trial on inmate's claim that he was placed in segregation in retaliation for his grievances).

The record shows that inmates were routinely given tasks needed to keep the common areas clean and, indeed, Indiana law provides for such a practice. *See* 210 Ind. Admin. Code § 3-1-15(g) (pretrial detainees can be required to perform work "necessary to maintain their living quarters in a safe and sanitary condition"). When VanPatten complained that the showers were not being adequately cleaned, Lt. Oetinger heard his concerns, and then assigned him to work on solving the problem. I am required to afford prison officials "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline[.]" *Bell v. Wolfish*, 441 U.S. 520, 540 (1979). Based on the record, I cannot conclude that Lt. Oetinger acted improperly in requiring VanPatten to take a turn cleaning the showers after he complained about their condition. *See, e.g., Antoine v. Ramos*, 497 Fed. App'x 631, 634 (7th Cir. Dec. 5, 2012) (holding that where prison officials had a valid reason to search inmate's cell, his claim that they did so in retaliation for his grievances failed). Accordingly, summary judgment for Lt. Oetinger is warranted.[5]

For the reasons set forth above, the defendant's motion for summary judgment (DE 39) is **GRANTED**, and the clerk is **DIRECTED** to enter judgment in favor of the defendant.



**SO ORDERED.**

---

[5] Lt. Oetinger argues that any claim VanPatten may have under state law fails as well. (DE 49 at 9-10.) I did not grant VanPatten leave to proceed on any state law claims in this action (*see* DE 15), so I find it unnecessary to reach this argument.

ENTERED:    May 16, 2013.

s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT